UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DEANA RENEE NORTHCUTT, | § | |
| | § | |
| *Plaintiff*, | § | CIVIL ACTION NO. |
| | § | |
| vs. | § | _____ |
| | § | |
| SOUTHWEST AIRLINES CO., | § | |
| | § | |
| *Defendant*. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

The plaintiff, Deana Renee Northcutt, ("Plaintiff" or "Northcutt"), complains of the defendant, Southwest Airlines Co. ("Defendant" or "SWA"), as follows:

## VENUE AND JURISDICTION

1. Northcutt is a citizen of the United States and a resident of the State of Texas.

2. Northcutt was a Compliance Program Manager for SWA and venue is proper because she has been subjected to unlawful employment practices committed in the State of Texas, Northern District, Dallas Division.

3. SWA is primarily involved in the business of air transportation.

4. SWA is a Texas corporation, conducting business in Texas at 2702 Love Field Drive, #HDQGTX, Dallas, Texas 75235-1908, in the Northern District, and elsewhere, and this action accrued in whole or in part in the Northern District.

5. SWA may be served with process by serving its registered agent in Texas: Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

6. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343(a)(4), and 28 U.S.C. §1337. The complaint seeks declaratory relief pursuant to 28 U.S.C. §§ 2201, 2202.

7. Jurisdiction of this Court is invoked pursuant to the Family Medical Leave Act of 1993 ["FMLA"] 28 U.S.C. §1331 and 29 U.S.C. § 2601 *et. seq*.

8. This is a proceeding for injunctive and other legal and equitable remedies available to secure the rights of Northcutt under the FMLA. It is brought to prevent SWA from maintaining policies, practices, customs, or usages of discriminating against Northcutt regarding the terms, conditions, and privileges of employment in violation of these statutes.

9. This matter in controversy exceeds, exclusive of interest and costs, the minimum jurisdictional limits of this Court.

## STATEMENT OF FACTS

10. Northcutt worked for SWA for over twenty-five years. For approximately the last seventeen years, Northcutt worked on the Drug and Alcohol team, an organization within the Human Resources ("HR") department. Since March 2022, Northcutt was a Compliance Program Manager for the Drug and Alcohol Program. At the time that she was terminated, Northcutt was the most tenured employee on the team.

11. At the time of her termination, Northcutt reported to Noemi Moreno ("Moreno"), People Team Leader, Drug and Alcohol Program, who had been hired in approximately November 2021. Before Moreno became her supervisor, Northcutt reported to Pamela Berry ("Berry"), Manager of the Drug and Alcohol Team.

12. Throughout her employment Northcutt received very good job performance reviews, which reflected that she was meeting or exceeding expectations. Northcutt had never been given any type of disciplinary action or been verbally counseled concerning her job performance.

13. In 2017, Northcutt's son was born. He had an extremely serious medical condition, omphalocele, a condition which caused many of his organs to develop outside of his body. Many babies born with this condition, especially if it is severe, do not survive. As a result of his condition, he has had nine surgeries in preparation to put the organs back inside his body. Initially he had a tracheostomy and ventilator (which have since been removed), and he also still has a feeding tube.

14. For the first few years after Northcutt's son was born, they had 24/7 nursing care, and Northcutt only needed to take sporadic FMLA leave to care for him. However, in late August 2021, Northcutt and her wife lost their nursing care, and due to the Covid pandemic, they were unable to find nursing coverage due to nurses taking available hospital positions. Northcutt therefore began taking intermittent FMLA leave up to three days a week as needed to care for him.

15. In approximately early May 2022, SWA received a letter indicating that there would be an FAA audit the week of August 8-12, 2022. Due to Covid, the audit covered a much larger time span than usual. Northcutt knew the scope of the audit would be challenging, but she had gone through a FAA audit at least seven or eight times previously, without any issues. At the time SWA was notified of this audit, Northcutt was utilizing intermittent FMLA to care for her child some days.

16. After the notification of the audit, there was an initial deadline set by Moreno for audit files and records to be ready for inspection on July 1, 2022. It was clear however, the team would not be able to meet this deadline, and all team members continued to work on getting the documents together through the date the audit commenced on August 8, 2022. On July 21, 2022, Crystal Lawrence ("Lawrence"), the team Coordinator, noted that many team members were "on track" to complete the files by the week of the audit, thereby

acknowledging team members had not been able to meet the July 1, 2022 original deadline. At the time of this email, it was noted that only one team member, Elizabeth Scarim ("Scarim"), Compliance Program Manager, who had only had five to ten DOT files, was done getting her records in order. Northcutt, and the other most tenured team employees, Carole Bolan ("Bolan"), Program Lead, DER, Linda Berlanga ("Berlanga"), Program Manager Drug and Alcohol Team, and Clint Holly ("Holly"), Senior Drug & Alcohol Specialist, had over one hundred DOT files each, and did not yet have the files completed. Other team members who had close to complete files had substantially fewer files than the less experienced team members.

17. Northcutt was aware nearly all team members continued to work on files throughout July 2022. In fact, colleagues continued to indicate to Northcutt in the week leading up to the audit, and even the day before the audit began, and that they were still working to complete the files. Northcutt successfully completed her files, with none being missing or incomplete, before the audit, despite having continued to take intermittent FMLA leave to care for her son throughout July and into early August 2022.

18. On July 21, 2022, there was a meeting in which Moreno indicated that she intended to change the way that the drug team would choose hotline days. The employees had been able to select the days they would cover the hotline themselves, which worked well for Northcutt, because she could choose hotline days on the days she did not need to take intermittent FMLA leave, allowing her to take as many hotline days as her peers. Moreno said she had gotten complaints about the previous system, but she did not talk to the tenured team members about the pros and cons of making any changes. Northcutt told Moreno that she usually chose dates first due to her FMLA leave, so that she could take as many days as other team members when she knew she would be available.

19. On July 25, 2022, Moreno forwarded an email from Northcutt to Scarim requesting Scarim's assistance since Northcutt was out on leave. Within the email it referenced Northcutt's expected upcoming August 2022 FMLA leave, in which Northcutt had provided Moreno with confidential health information relating to her son. Scarim further forwarded Northcutt's FMLA requests and information about her son's medical issues to Leaders in the Inflight and Labor Relations group. Northcutt advised Moreno that she did not think it was appropriate that this information was disseminated.

20. Starting August 1, 2022, Moreno changed the system so that the dates to work on the hotline would be chosen in alphabetical order of team members. Because Northcutt had to work out her childcare schedule with her wife six to eight weeks in advance, this change required Northcutt to rework childcare coverage and other needs for her son. Northcutt told Moreno that the change would cause her to not take as many days to cover the hotline as other team members due to her intermittent FMLA leave, and she indicated concern that other team members would be resentful. Moreno responded that if Northcutt was not there, the next date would fall to the team member behind her, and Northcutt said this would not result in a fair allocation of hotline days. Northcutt felt that this change was specifically made to make her colleagues resent her for not being able to cover the hotline as much as usual. Northcutt indicated to Moreno that she was trying to do her fair share of the hotline and felt it was implied by Moreno that since she was using intermittent FMLA leave and PTO, that she was unable to do her fair share.

21. On August 3, 2022, Berlanga asked for "all hands-on deck" to print random tests for January 2021, which had been delivered on August 1, 2022, because they needed to be presented to the FAA for the audit. Further, on August 7, 2022, Holly sent a text message to the team, stating he was just leaving the office and there were 28 boxes and "counting,"

indicating that they were still putting files into boxes for the audit commencing the next day. Berlanga also responded to the group text that she was leaving as well.

22. On August 3, 2022, Northcutt sent an email to the team reminding them to complete the numbers they were assigned on the FAA Inspection Sheet and add to the blue bin. Additionally, she reminded the team to add their non-negative files to the file drawer.

23. On August 3, 2022, Northcutt's colleague, Bolan, who officed in Maryland, advised her that she was not going to be able to come to Dallas for the audit as originally planned, because she had shingles and Leadership was not comfortable with her coming even though she had a doctor's note stating she could travel. Bolan was advised that she could not come to Dallas on Friday, August 5, 2022, at 7:30 p.m. EST.  Cynthia Chapman ("Chapman"), the administrative assistant, sent Bolan's FedEx label on Monday, August 8, 2022, at 7:00 a.m., and Bolan sent her five remaining files by FedEx for arrival on Tuesday, August 9, 2022, to Berry's attention.

24. On August 9, 2022, Northcutt was in the office and Berry and Moreno were in a conference room most of the day and did not seem to be interacting with the rest of the team. Also on August 9, 2022, Northcutt logged into a Teams conference, and found out that Bolan had been placed on administrative leave, with no reason given at the time. That same day, Berry requested Northcutt come to a huddle room she was in and Berry questioned her about an email written to Berlanga and Bolan. It became clear that Berry was searching through Bolan's email, which Northcutt found strange and uncomfortable.

25. On August 12, 2022, the FAA completed the audit at the office. Northcutt mentioned to Moreno on several occasions, that she was surprised the FAA had not questioned them about an employee who was missing a test (which Berry was aware of as his file had been completed since May 2021). Moreno also seemed surprised. On August 15, 2022, Northcutt

could not find that employee's file or another Return to Duty file (whose file was also ready for the FAA audit but who still had testing taking place), and asked Moreno where they might have been placed after the audit, but despite looking in several places, Northcutt could not find the files.

26. On August 16, 2022, team members were asked to come in to organize and pack up documents from the audit for storage. Northcutt mentioned to Berlanga, Lawrence, and Scarim that she could not find two Return to Duty files, and Scarim admitted that she had forgotten the files were in her desk and did not provide them to the FAA. Scarim went up to her office with Northcutt and located the files in Scarim's drawer. Northcutt and Scarim reported the issue to Moreno, who said not to worry about it and that they would be okay and SWA would most likely just self-disclose the omission. Moreno knew that in the past it was not uncommon to discovery inadvertent mistakes and for self-disclosures to be made to the FAA.

27. To Northcutt's surprise, that same afternoon she was called into a meeting with Irma Becerra ("Becerra"), Employee Relations Partner, Employee Relations, who had just started working at SWA. Becerra said that she was investigating files missing from the FAA audit by Bolan. Northcutt advised Becerra that she thought Bolan's files had arrived by the Monday of the audit as far as she knew, and so they were not missing. Northcutt also advised Becerra that two of her files were found in Scarim's credenza as Scarim forgot that they were there and failed to put them with the other files, and stated that those files were not missing either.

28. On August 22, 2022, Northcutt went on FMLA leave and PTO until September 12, 2022, due to her wife having rotator cuff surgery, which prevented her from driving or engaging in necessary childcare since she could not use her arm. Despite the fact she was on FMLA,

    Becerra contacted Northcutt while she was leave on August 25, 2022, asking for a meeting for August 26, 2022. In that meeting, Becerra further questioned Northcutt about her files and those of Bolan. Becerra specifically asked Northcutt if the files in Scarim's desk had been completed, and Northcutt confirmed they had been ready for the audit. Northcutt clarified for Becerra, after being questioned about a Team Connect message, that on August 2, 2022, Scarim had messaged her to indicate the files were in her credenza drawer, to which Northcutt had responded that she would not be in the office when the audit started so we may just have to give it to the FAA as is. On August 3, 2022, Scarim affirmatively replied "okay," so Northcutt understood Scarim to have undertaken the responsibility that these files be placed in the box for the FAA audit. Becerra specifically asked Northcutt if she assumed from Scarim's response that she would take care of the files, and Northcutt said yes. Northcutt had been ill the week before the audit because she had been diagnosed with the flu, Covid, and pink eye, and then she was on FMLA leave August 4 and 5th, 2022.

29. Much to Northcutt's shock, Becerra also told her that she, Berlanga, and Bolan, were under investigation for "bullying" and "inclusivity." This second investigation occurred even when the other investigation regarding Bolan's missing files was still not completed. The only matters mentioned regarding bullying and inclusivity were emails Berry found on Bolan's computer and a team phone call where it was alleged Northcutt seemed upset. Northcutt inquired when this allegation had come up and Becerra said about the time the other investigation started. Northcutt denied she had ever engaged in any bullying behavior. Northcutt told Becerra about the issue that had risen in regarding choosing of hotline days, and that she felt this was done so that the other team members would resent her for taking intermittent FMLA leave to care for her disabled child. Northcutt further indicated she had been careful to be inclusive to all team members and provided numerous examples to

Becerra about how Leadership was not inclusive. To Northcutt's knowledge, the allegation against her concerning lack of inclusion or bullying were not substantiated.

30. On August 24, 2022, Moreno gave Northcutt a "kick tail" award in response to the FAA audit, thanking her for her hard work and diligence to ensure the Drug and Alcohol Program is the best in the industry. John Viard ("Viard"), Senior Manager of People, just prior to Moreno, had also given Northcutt a kick tail award, indicating her efforts were valued and appreciated.

31. On September 2, 2022, Bolan was terminated on grounds of the FAA audit. Bolan had recently been granted FMLA leave to care for her daughter, and in 2022, Moreno had criticized her in her performance review for not having a better work/family balance. Bolan was the second most tenured person on the drug team.

32. Northcutt and the rest of the team received an email appointment for September 3, 2022, to celebrate the good work that had been done on the FAA audit.

33. Although Northcutt had utilized intermittent FMLA leave in 2022, at the time of her termination, Northcutt still had remaining FMLA leave that she could have continued to use had she not been terminated, and SWA knew that she had approval to use this intermittent FMLA leave to care for her son.

34. On September 11, 2022, Northcutt was requested to attend a team meeting on September 12, 2022. Northcutt got on the call and Viard and Berry, as well as Karen Thrasher ("Thrasher"), Manager HR Business Partner, were present. Viard advised Northcutt that the investigation had been substantiated with issues regarding the FAA audit and that she was being terminated effective immediately. Northcutt was caught completely off guard as she had not understood that she was a target of the investigation and was never told she was being investigated for missing files. Viard responded that it was "general

investigation." In the termination notice provided Northcutt, it states she was terminated for: (1) failure to disclose missing files; (2) failure to disclose incomplete files; and (3) missing required deadlines to submit documents and files needed for audit. It accused Northcutt's actions of potentially causing SWA to be fined or deemed non-compliant in the Drug and Alcohol program.

35. At the time of Northcutt's termination, SWA retained Scarim, who had been hired in April 2022 as Senior Drug & Alcohol Specialist, and promoted in May 2022, to Compliance Program Manager. Scarim had not utilized any FMLA leave and was promoted despite not being employed by SWA for more than six months, when employees at SWA are not supposed to be promoted until they are there at least six months. Although Scarim was the person who failed to turn over files in the FAA audit, no action was taken against her.

## FMLA CLAIM

36. Throughout Northcutt's employment, until on or about September 12, 2022, SWA employed at least fifty employees and was an employer as that term is defined in FMLA.

37. At all times material herein, SWA was engaged in commerce, or in the production of goods for commerce, or had employees engaged in commerce or in the production of goods for commerce.

38. At the time Northcutt could have taken FMLA leave, she was an eligible employee, as that term is defined in the FMLA, of SWA, because her son has the serious health conditions of omphalocele, and she was employed by SWA for more than twelve months, working more than 1,250 hours before she could have requested FMLA leave.

39. SWA discriminated and/or retaliated against Northcutt for exercise of her FMLA rights, specifically her eligibility to take FMLA leave, and/or unlawfully interfered with Northcutt's right to take FMLA leave, in violation of the FMLA, 29 U.S.C. §2601, *et seq.*.

40. After her son's birth in 2017, Northcutt submitted necessary information to SWA about his health condition that resulted in the company initiating the process for FMLA leave. Through these actions, Northcutt took time off work, and/or requested time off in the future, to care for a serious health condition as that term is defined in 29 U.S.C. § 2611(11). Through these actions, pursuant to 29 C.F.R. § 825.303(b), Northcutt provided sufficient information to reasonably determine that FMLA leave applied to her request.

41. On September 12, 2022, Northcutt was terminated. In terminating Northcutt's employment and/or refusing to rehire or return her to work with similarly situated coworkers, SWA interfered with, restrained, or denied the exercise or attempted exercise of Northcutt's right to take FMLA leave; retaliated against Northcutt because she sought protection under the FMLA; and/or treated Northcutt less favorably than employees who had not taken FMLA leave, requested FMA leave, and/or given notice of a need to take leave.

42. SWA's conduct was in violation of 29 U.S.C. §2601, *et seq.*, specifically, 29 U.S.C. §2615(a)(1), 29 U.S.C. § 2615(a)(2), and 29 U.S.C. § 2615(b).

43. Northcutt has no plain or adequate remedy at law to correct the wrongs complained of herein, and has thus instituted this suit for damages, including economic damages, liquidated damages, declaratory relief, and injunctive relief provided for the FMLA, as amended. Further, Northcutt is now suffering and will continue to suffer irreparable injury from SWA's policies, practices, customs, and usages, set forth herein.

## **RELIEF REQUESTED**

44. Northcutt requests that this Court grant her the following relief from SWA:

    A. A declaratory judgment against SWA, declaring its past practices herein complained of to be unlawful under the FMLA;

    B. A permanent injunction, enjoining SWA from continuing to discriminate against her on account of FMLA leave in violation of the FMLA;

C. Backpay, front pay, retroactive seniority, pension benefits, bonus payments, health benefits, and any other relief necessary to compensate Northcutt for damages for violations of the FMLA;

D. Liquidated damages for SWA's willful violation of the FMLA;

E. Implementation of a clear and effective grievance procedure for employment discrimination complaints with an effective non-retaliation provision;

F. Attorney fees from SWA for the prosecution of her FMLA claims;

G. Costs for the prosecution of the FMLA claims, including the cost of expert witness fees;

H. Pre-judgment interest at the legally prescribed rate from the date of the violations until judgment as well as post-judgment interest as applicable;

I. Such other general relief to which Northcutt is justly entitled.

## **JURY DEMAND**

45. Northcutt demands a jury on her FMLA claims, specifically, the ultimate issues of fact as to the merits of the dispute, backpay, frontpay, employee benefits, and compensatory and punitive damages, excepting the attorneys' fees issues.

Respectfully Submitted,

/s/ Jane Legler
Jane Legler
Texas Bar No. 03565820
Christine Neill
Texas Bar No. 00796793
Kyla Gail Cole
Texas Bar No. 24033113

Neill Legler Cole PLLC
3300 Oak Lawn Avenue, Suite 425
Dallas, Texas 75219
(214) 748-7777
(214) 748-7778 (facsimiles)
christine@nlcemployeelaw.com
jane@nlcemployeelaw.com
kyla@nlcemployeelaw.com

Attorneys for Plaintiff